IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

CHEEZY PULLIAM                                                          PLAINTIFF

v.                          CASE NO. 2:24-CV-00148-BSM

EARNEST CHAD RASH, individually
and in his official capacity for the City
of West Memphis                                                        DEFENDANT

## ORDER

Defendant's motion for summary judgment on plaintiff's individual capacity claims [Doc. No. 36] is denied on all claims except outrage and his motion for summary judgment on plaintiff's official capacity claims [Doc. No. 29] is granted.

## I. BACKGROUND

The undisputed facts as set forth in plaintiff's response to defendant's statements of undisputed material facts, Doc. Nos. 51 (SUMF I) & 57 (SUMF II), are as follows.

Defendant Earnest Rash is a police officer with the West Memphis Police Department. SUMF II ¶ 1. When West Memphis Police Officer Cecil Langston attempted to stop plaintiff Cheezy Pulliam's car, Pulliam fled and Rash joined in the pursuit. *Id.* ¶¶ 2 & 4–5. Pulliam's car ultimately came to a stop and he was arrested by officer Taurus Harvell. *Id.* ¶¶ 7–8. Pulliam states that when Rash arrived at the scene, he kicked Pulliam in the head while Pulliam was lying on the ground in handcuffs. *Id.* ¶¶ 9–11. Although Pulliam told officers on the scene that he was kicked in the head, no injuries were observed and Pulliam declined medical care. *Id.* ¶¶ 12–15. Pulliam never received treatment and did not file a formal

complaint.  *Id.* ¶¶ 17–18, 22.

The police department initiated an internal affairs investigation after a video of the incident was uploaded to the internet.  *Id.* ¶¶ 23–29.  The investigation concluded that Rash deliberately kicked Pulliam in violation of policy.  *Id.* ¶ 30.  Chief Robbin Campbell held a disciplinary hearing and decided to fire Rash.  *Id.* ¶ 32.  After an appeal hearing, West Memphis Mayor Marco McClendon overruled Campbell, reinstated Rash, gave him a ten day suspension, and ordered him to attend anger management classes.  *Id.* ¶¶ 34–35.

Pulliam is suing Rash in his individual and official capacities under 42 U.S.C. section 1983 and the Arkansas Civil Rights Act for excessive force and claims of civil action by a crime victim, assault, battery, and outrage. Doc. No. 52 ¶ 21; Doc. No. 56 ¶ 1. Rash is moving for summary judgment on all claims.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).  Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings.  *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011).  Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial.  *Id.*  All reasonable inferences must be drawn in a light most favorable to the non-moving party.  *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007).   The evidence is not weighed, and no credibility

determinations are made.  *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

### III. DISCUSSION

A.    <u>Individual Capacity Claims</u>

Summary judgment is denied on all of Pulliam's individual capacity claims except his outrage claim.

### *1. 42 U.S.C. Section 1983 and Arkansas Civil Rights Act*

To establish an excessive force claim under the Fourth Amendment, Pulliam must show that Rash used unreasonable force.  *Nieters v. Holtan*, 83 F.4th 1099, 1108 (8th Cir. 2023), cert. denied, 144 S. Ct. 1349 (2024); *Graham v. Cawthorn*, 427 S.W.3d 34, 44–45 (Ark. 2013) (ACRA excessive force claims are analyzed identically to those filed under section 1983).  Whether the force used by Rash complied with the Fourth Amendment depends on whether his actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his subjective intent or motivation. *Nieters*, 83 F.4th at 1108.  The totality of the circumstances must be considered, including the severity of the crime committed by Pulliam,  whether Pulliam posed an immediate threat to the safety of Rash or others, and whether Pulliam was actively fleeing or resisting arrest at the time the force was used.  *Id.*  While *de minimus* use of force is not actionable, *de minimus* injury is.  *Westwater v. Church*, 60 F.4th 1124, 1129 (8th Cir. 2023).

Kicking a detainee in the head while he is lying on the ground in handcuffs violates the Fourth Amendment.  *See* cases cited below in qualified immunity discussion.  Viewing the record in the light most favorable to Pulliam, there are genuine issues of material fact in

dispute as to whether Rash kicked Pulliam while he was lying on the ground in handcuffs. This is true because the video of the incident is sufficient to create a close question. *See* SUMF II, Ex. 10, Too Tymes Video at 00:04–00:29. Whether this video shows Rash kicking Pulliam is a fact question for a jury to determine because reasonable jurors could see this differently.

Rash argues that Pulliam's inconsistent statements on where exactly Rash kicked him weigh against his self-serving claim that Rash kicked him. Regardless of the specific place on the head where the kick landed, Pulliam has consistently asserted that Rash kicked him in the head. The weight and reliability of Pulliam's statements is for a jury to determine. Rash also spends a significant amount of time arguing that the Internal Affairs report detailing the department's response to the video should not be admitted into evidence, which will be taken up closer to trial, but even if it were deemed inadmissable, the video is enough to survive summary judgment.

The next question is whether Rash is immune from suit. Qualified immunity shields law enforcement officers from civil damages when their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known. *Kelsay v. Ernst,* 933 F.3d 975, 979 (8th Cir. 2019).

Qualified immunity does not shield Rash because it is clearly established that an arrestee lying on the ground in handcuffs has a right not to be kicked in the head. *Nieters*, 83 F.4th at 1109. Use of force against a non-threatening or non-resisting suspect may be unlawful. *See Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011) (being kicked

several times on both sides of his body, although he was restrained on the ground and offering no resistance was not objectively reasonable); *Smith v. Kansas City, Missouri Police Dep't*, 586 F.3d 576, 582 (8th Cir. 2009) (knocking a non-resisting suspect to the ground is a violation of a clearly established right)*; Lambert v. City of Dumas*, 187 F.3d 931, 936 (8th Cir.1999) (holding that "[a] single small cut of the lateral right eyelid and small scrapes of the right posterior knee and upper calf" were sufficient to support an excessive force claim); compare with *Robinson v. Hawkins*, 937 F.3d 1128, 1136 (8th Cir. 2019) (not excessive force when shoved against a trailer to be handcuffed). Finally, a genuine issue of material fact exists as to whether Rash actually kicked Pulliam in the head.

### 2. Assault and Battery

To prove his assault and battery claim, Pulliam must show that (1) Rash intentionally placed Pulliam in fear of immediate physical harm and (2) Rash acted with the intent to cause harmful contact to Pulliam and did so. *Mann v. Pierce*, 505 S.W.3d 150, 154 (Ark. 2016). For the reasons explained above, a reasonable juror could find that Rash intentionally kicked Pulliam and did so with intent to cause harm. Summary judgment is therefore denied.

### 3. Civil Action by a Crime Victim Act

Summary judgment is denied on Pulliam's civil action by a crime victim claim. To establish this claim, Pulliam must prove he was damaged by Rash's felonious conduct. Ark. Code Ann. § 5-13-203. In support of this requirement, Pulliam argues that Rash committed aggravated assault against him. *See* Br. Supp. Pl.'s Resp. Def.'s Mot. Summ. J. Individual Capacity at 5, Doc. No. 58. Pulliam must also show that Rash purposely engaged in conduct

5

that created a substantial danger of death or serious physical injury. Ark. Code Ann. § 5-13-204 (a)(1). Pulliam argues that kicking someone in the head creates a substantial danger of death or serious physical injury. Whether this is true is a question to be determined by the jury. *J.N.A. v. State*, 532 S.W.3d 582, 589 (Ark. Ct. App. 2017) (a gun used as a bludgeon could inflict the requisite harm for aggravated assault) (the fact-finder considers the evidence as a whole).

### *4. Outrage*

Summary judgment is granted on Pulliam's outrage claim. Although Pulliam maintains this claim in his response, he does not make any argument about it, therefore it is waived. *Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009); Pl.'s Resp. Def.s' Mot. Summ. J. ¶ 21, Doc. No. 52; Br. Supp. Pl.'s Resp., Doc. No., 58.

### B.    Official Capacity Claims

Summary judgement is granted on Pulliam's official capacity claims. A suit against Rash in his official capacity is the same as a suit against the Department. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). To prove his section 1983 claim, Pulliam must establish the existence of a policy or custom resulting in his injury. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978). Pulliam narrows his official capacity arguments to ratification of Rash's actions by Mayor McClendon and a widespread custom of tolerating force and suppressing accountability. *See* Pl.'s Br. Opp. Def.'s Mot. Summ. J. at 9–10, Doc. No. 58.

## 1. Ratification by Mayor McClendon

Pulliam first argues that Mayor McClendon approved Rash's decision and the basis for it when he reinstated Rash and implemented a ten day suspension with anger management as his discipline. *Id.* Liability for ratification attaches only when the decision maker possess final authority to establish policy with respect to the action. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). The fact that Mayor McClendon has discretion in the exercise of particular function does not, without more, give rise to liability based on the exercise of that discretion. *Id.* at 482. The problem for Pulliam, is that Mayor McClendon is not the final policy maker for the Department. *Id.* (the official must be responsible for establishing final government policy respecting such activity); *see Brinkley v. City of Helena-W. Helena, Ark.*, No. 2:11-CV-00207-SWW, 2014 WL 4164614 *3 (E.D. Ark. Aug. 21, 2014) (while the police department is under the direction of the mayor it does not necessarily render the mayor the final policy maker for the police department); Ark. Code Ann. § 14-52-101 (the city council shall have power to establish a city police department and prescribe its duties and powers).

Even if Mayor McClendon is the final policymaker for the police department, he did not approve Rash's decisions or the basis for it. *See Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 947 (8th Cir. 2017) (ratification requires proof that the policymaker specifically approved the subordinates act). Although, ratification is generally a question for the jury, it is undisputed that Mayor McClendon disciplined Rash for the incident. SUMF I ¶ 29. The fact that Pulliam disagrees with the discipline that was handed out does not mean

that the Mayor ratified Rash's actions.

*2. Widespread Custom*

Pulliam next argues that the West Memphis Police Department has a widespread custom of tolerating force and suppressing accountability. Doc. No 58 at 10. To establish a custom, Pulliam must show (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the Department employees; (2) deliberate indifference to or tacit authorization of such conduct by the Department's policymaking officials after notice to the officials of that misconduct; and (3) Pulliam's injury by acts pursuant to the Department's custom - proof that the custom was the moving force behind the constitutional violation. *Ware v. Jackson Cnty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998).

To prove that there is a pattern of misconduct at the Department, Pulliam points to the affidavit of former West Memphis police officer, Stacy Allen, that alleges the Department has a "cowboy culture of non-compliance with the constitution;" wants staff to be like the "Italian mafia;" and encourages the use of "phonebook" tactics. Aff. Stacy Allen, Doc. No. 51, Ex. 1 ¶¶ 4–5, 10. Additionally, Pulliam points to the declaration of Mose Walker which explains that Chief Campbell repeatedly circumvents the chain of command and that the discipline process is reactive to public exposure. Dec. Mose Walker, Doc. No. 51, Ex. 2 ¶¶ 3–5. Evidence that the Department failed to investigate previous incidents similar to Pulliam's may support a finding that a custom exists. *See Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999). The problem for Pulliam, however, is that these affidavits do not detail any similar incidents. Although Allen's affidavit describes an excessive force incident

8

involving a citizen, it does not describe an incident similar to the one at issue and it states that Chief Campbell said it was being investigated and two officers were disciplined.  Allen Aff. ¶ 13; *see also* Dep. Earnest Chad Rash at 14:5–15.  Further, a single incident normally does not suffice to prove a custom.  *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985).

 Pulliam also argues that the failure of the Department to file a use of force report immediately after the incident shows the Department has a custom of non-reporting, non-investigation, and leniency, which are the moving forces behind Rash's actions.  Doc. No. 58 at 11. The uncontested evidence shows that once the video appeared on social media, the Department launched an investigation, relieved Rash of duty pending the investigation, interviewed witnesses, including Pulliam, held a disciplinary hearing, and terminated Rash. SUMF I ¶¶ 22–27.  Pulliam points to nothing in the record that would support a pattern of non-investigation.   It is true that neither Rash nor the other officers at the scene filled out a use of force report, but Rash maintained that he did not kick Pulliam, rather he tripped and fell.  *Id.* ¶¶ 19–20.  While it is possible that the failure to file a use of force report was a violation of Department policy, Pulliam has failed as a matter of law to prove causation between a custom and his injury.  *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 799 (8th Cir. 1998); *Walton v. Dawson*, 752 F.3d 1109, 1122 (8th Cir. 2014) (violating an internal policy does not *ipso facto* violate the Constitution).

 Finally, Pulliam argues that Department leadership such as Chief Campbell and Mayor McClendon were on notice and tacitly authorized deferring or suppressing internal affairs involvement.  Doc. No. 58 at 11.  Even if true, this is insufficient to show that the

West Memphis City Council was on notice of prior excessive force incidents. *See Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 392–93 (8th Cir. 2007).

## IV. CONCLUSION

For these reasons, Rash's individual capacity motion for summary judgment is denied on all claims except outrage and Rash's official capacity motion for summary judgment is granted.

IT IS SO ORDERED this 16th day of January, 2026.

_____
UNITED STATES DISTRICT JUDGE